IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MICHAEL FERRIS,

*Plaintiff*,

v.

SIMIONE HEALTHCARE CONSULTANTS, LLC,
&

WILLIAM J. SIMIONE III
BETTY L. GORDON
SHELDON J. BERMAN
MARIAN C. ENTIN
ELISABETH M. LAPIN
MARK TSIAMES
DAVID BERMAN
MAJORITY MEMBERS

*Defendants*.

Civil Action No. 3:19-cv-00918

June 13, 2019

**COMPLAINT AGAINST DEFENDANTS**

## I. INTRODUCTION

On December 6, 2017, Michael Ferris ("Mr. Ferris" or "Plaintiff") was working for his company, Simione Consultants LLC ("Simione" or the "Company"). Mr. Ferris was both a minority stakeholder in the company and an employee. There were no problems with his performance as an employee or as a member. The only problem with Mr. Ferris, *vis-a-vis* his position with the Company, is that the majority-members had structured equity payouts for themselves at the expense of the Company and promises made to Mr. Ferris. In order to avoid those promises to Mr. Ferris, and in degradation of the rights and erasure of Mr. Ferris's interests in the Company, and in the value he had helped create, on

December 7, 2017 – in a text message accidentally sent to Mr. Ferris's account – Mr. Ferris was told that he was being let go and shut out at the age of sixty-two (62) years old. As outlined, this termination was baseless and illegal, and it served only the illegitimate and unfounded goal of taking Mr. Ferris's interest in the Company and the compensation he had earned. Of course, Mr. Ferris's loss was the Company's gain – or more specifically, the financial gain of the majority membership.

## II. PARTIES

1. The Plaintiff, Michael Ferris, is an individual residing in El Paso, Texas.

2. The Defendant, Simione Consultants, LLC, is a limited liability company duly organized and existing pursuant to the laws of the State of Connecticut, with a principal place of business at 4130 Whitney Avenue, Hamden, Connecticut.

3. The Defendants William J. Simione III, Mark Tsiames, and David Berman reside in Connecticut; the remaining Defendants are all members of the Company, none reside in Texas; and the individual defendants compromise the "Controlling Members" of the Company.

## III. JURISDICTION AND VENUE

4. The Plaintiff and Defendants are parties to a membership and employment agreement (described in greater detail below) providing that Connecticut law shall apply to any cause of action arising out of their dealings and providing for proper jurisdiction in any appropriate venue in the State of Connecticut.

5. This Court has original jurisdiction of this civil action because the amount in controversy exceeds $75,000.00 and because both the Plaintiff and each of the Defendants are citizens of different states as set forth and defined in 28 U.S.C. §1332(a)(1) and (c)(1).

6. Venue is proper pursuant to 28 U.S.C. §1391(b)(2).

## IV. FACTUAL ALLEGATIONS

7. Mr. Ferris first become involved with the Company, when Simione acquired Mr. Ferris's company, Home Care & Hospice Marketing Solutions (a d/b/a) in July 2008.

8. At the same time, and in consideration of the purchase, Mr. Ferris became an employee of Simione, with an agreed upon path and opportunity for Mr. Ferris to become a member of the Company.

9. On January 1, 2012, Mr. Ferris accepted a membership interest with the company (effective as of January 1, 2012).

10. On or about May 24, 2012, the Company and its members executed a Second Amendment to the Operating Agreement (hereafter the "Ferris Membership Agreement").

11. At the time of his initial membership, Mr. Ferris' percentage interest in Simione stood at 1%.

12. Mr. Ferris's interest was later increased to 5.56%. (in an April 2017 Amendment to the Operating Agreement, hereafter "Exact Acquisition Amendment").

13. The Ferris Membership Agreement provides certain payments to Mr. Ferris, including the right to compensation in exchange for threshold periods of employment and service to the Company (with payment schedules depending upon his length of service to the company, Mr. Ferris was entitled to deferred payments).

14. Mr. Ferris's membership was dependent upon his continued employment with the Company.

15. Amongst other things, the Ferris Membership Agreement provides that "the provisions of Sections 11.6 and 11.7 of the Operating Agreement shall be applicable to"

Mr. Ferris (*Id.*, ¶4(c)). In this regard, the Ferris Membership Agreement makes reference to an earlier August 8, 2010 Simione Operating Agreement (the "Simione Operating Agreement").

16. The Simione Operating Agreement, Section 11.6, provides as follows: "In the event that a Member shall be terminated as full time employee of the Company without cause…he shall receive payment (the Purchase Price) for his Membership Interest in the Company…on the terms set forth in Section 11.4." (Simione Operating Agreement § 11.7).

17. The Ferris Membership Agreement contains a substitute Section 11.4 that is substantially different from the Simione Membership Agreement. The Ferris Membership Agreement provides that, in the event of Mr. Ferris's "no cause" termination, in consideration of his work for the Company, he would be paid a "Purchase Price" consisting of Mr. Ferris's percentage membership interest in the company, calculating the "fair market value of the Company…in accordance with generally accepted accounting principles consistently applied to the Company." (Ferris Membership Agreement § 4(a)).

18. In December of 2017, without any indication or notice as to a problem with his employment in any way, Mr. Ferris was accidentally texted a message by the principal of the company, Mr. Simione, stating that "Mike is being let go today!"

19. Thereafter, Mr. Ferris inquired multiple times as to the reasons for being "let go," but he received no answer. He also requested a meeting with his fellow Simione members and Principals, but he was told "no."

20. Mr. Ferris was also not informed as to the meeting and the termination decision makers (*i.e.* at membership meetings [of which Mr. Ferris was provided no notice], an Executive Committee meeting, or otherwise).

21. Referring back to the Simione Operating Agreement and the difference between the Section 11.4 therein, as opposed to the one found in the Ferris Operating Agreement, the Simione Operating Agreement contained lucrative payout provisions for the Members in the form of "Defined Benefit" and "Deferred Compensation" plans. Mr. Ferris was the only member who was not offered the Defined Benefit and Deferred Compensation plans.

22. When Mr. Ferris was given his termination notice, he was also informed that his capital account (which had to be returned pursuant to the Ferris Operating Agreement) had a negative balance. Mere months later, Mr. Ferris was informed that his capital account had a balance of $44,205.00.

23. Prior to terminating Mr. Ferris, in April of 2017, the Company's accountant valued the Company at approximately $14,000,000.00. Mr. Ferris's percentage interest in the Company was 5.56%. For ten years, his work built the Company, and that value and payout that was stripped from him.

24. As stated, Mr. Ferris does not know at what meeting his termination was discussed and voted upon; however, in that vote, the entire membership divided up and acquired Mr. Ferris's shares. Each member, as such, had a financial incentive in Mr. Ferris's removal.

25. The Company has not made any payment to Mr. Ferris for taking these shares from him.

## V. <u>CAUSES OF ACTION</u>

### <u>COUNT 1</u>
### <u>BREACH OF CONTRACT</u>
### (AGAINST SIMIONE HEALTHCARE CONSULTANTS, LLC)

26. Plaintiff incorporates the allegations throughout this Complaint as if fully set forth hereunder.

27. In or about July of 2008, and in various agreements thereafter, Mr. Ferris and the Company entered into a contract for the employment and membership of Mr. Ferris with the Company.

28. Mr. Ferris performed all, or substantially all, of the significant obligations that the contract required him to perform.

29. Despite Mr. Ferris's performance of the obligations required under their agreements, the Company breached the contract by abruptly and improperly terminating Mr. Ferris on December 7, 2017, without any cause, and without payment of the contractually agreed upon payment to Mr. Ferris.

30. In terminating Mr. Ferris without payment to Mr. Ferris, the remaining and majority members of the Company essentially were able to seize Mr. Ferris's interests for their own benefit at no cost.

31. In terminating Mr. Ferris's employment, the Company and its majority members breached the contract by failing to make payments Mr. Ferris as agreed.

32. As a result of the Company's breach, Mr. Ferris suffered, and continues to suffer, substantial harm and damages in an amount to be determined at trial.

## COUNT 2
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
## (AGAINST SIMIONE HEALTHCARE CONSULTANTS, LLC)

33. Plaintiff incorporates the allegations throughout this Complaint as if fully set forth hereunder.

34. In every contract or agreement there is an implied promise of good faith and fair dealing.

35. Such an implied promise of good faith and fair dealing requires that the parties to the contract will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

36. In or about July of 2008, Mr. Ferris and the Company entered into a contract for the employment of Mr. Ferris.

37. Mr. Ferris performed all, or substantially all, of the significant obligations that the employment contract required.

38. Mr. Ferris performed all of the conditions required for the Company to perform its obligations under the employment contract, including, but not limited to, payment to Mr. Ferris and continuation of his employment.

39. The Company unfairly interfered with Mr. Ferris's right to receive benefits of the employment contract.

40. As a result of the Company's conduct, Mr. Ferris suffered, and continues to suffer, substantial harm and damages in an amount to be determined at trial.

## COUNT 3
## BREACH OF FIDUCIARY DUTY AND BAD FAITH ACTIONS IN DEGRADATION OF MINORITY MEMBER'S RIGHTS
## (AGAINST SIMIONE HEALTHCARE CONSULTANTS, LLC AND CONTROLLING MEMBERS)

41. Plaintiff incorporates the allegations throughout this Complaint as if fully set forth hereunder.

42. In a limited liability company, a member or manager owes a fiduciary duty to the members of the limited liability company. A member or manager must administer their duties in good faith, in the best interests of the limited liability company, and in such a manner so as to not freeze out a minority member like Mr. Ferris. Further, a manager or majority member must not operate the company in bad faith; they must avoid self-dealing;

they must avoid using deception in a buy-out (or lack thereof) of a member; and they must refrain from unfair expulsion of a member.

43. By forcing Mr. Ferris out under an apparent and feigned "for cause" termination, the Manager and the participating Controlling Members, abused their decision-making authority for their own benefit (i.e. they inherited, without any payment, Mr. Ferris' membership interest that Mr. Ferris earned through payment and employment) at the expense of a minority-member who was powerless to curtail such abuse.

44. Mr. Simione is the managing-member of the Company and Ms. Gordon, Mr. Berman, Ms. Entin, Ms. Lapin, Mr. Tsiames, and Mr. Berman are the Controlling Members of the Company. Mr. Ferris was a member of the Company before the improper termination of Mr. Ferris as a member of the Company.

45. Mr. Simione failed to act as a reasonably careful manager, and the Controlling Members failed to act as reasonably careful members, in terminating Mr. Ferris's membership interest in the Company because they failed to properly inform, notify, and/or consult with Mr. Ferris of the meeting wherein the Company terminated Mr. Ferris's membership interests.

46. Mr. Simione failed to act as a reasonably careful manager, and the Controlling Members failed to act as reasonably careful members, in terminating Mr. Ferris's membership interest in the Company because they failed to properly include Mr. Ferris in the vote wherein the Company terminated Mr. Ferris's membership interests.

47. Mr. Simione failed to act as a reasonably careful manager, and the Controlling Members failed to act as reasonably careful members, in terminating Mr. Ferris's membership interest in the Company because they failed to properly inform, notify, and/or

consult with Mr. Ferris of the basis for the "for cause" termination of his membership interest in the Company. The lack of any good faith basis for a "for cause" termination also constitutes bad faith and the breach of the Controlling Members' duty to Mr. Ferris.

48. In terminating Mr. Ferris in this manner, and with no legitimate Company interest, the remaining members gained Mr. Ferris's distributional interest for no cost, and deprived Mr. Ferris to the gain of the remaining members' avoidance of a multi-million dollar payout mandated under the existing agreements and coming due in 2022.

49. As a result of Mr. Simione's failure to act as a reasonably careful manager would have acted under the same or similar circumstances, and as a result of the Controlling Members' failure to act as reasonably careful members would have acted under the same or similar circumstances, Mr. Ferris suffered, and continues to suffer, harm and damages in an amount to be determined at trial.

**COUNT 4**
**VIOLATIONS OF CONNECTICUT LAW CHAPTER 558, PART II SECTIONS 31-72**
**(AGAINST SIMIONE HEALTHCARE CONSULTANTS, LLC)**

50. Plaintiff incorporates the allegations throughout this Complaint as if fully set forth hereunder.

51. Mr. Ferris's membership was contingent upon his continuation as an employee.

52. Functionally, as was demonstrated by the unilateral action of the other members, Mr. Ferris had no control over his continued employment and, therefore, membership.

53. In consideration of serving the Company as an employee, Mr. Ferris was contractually promised certain payments, including payment of approximately $780,000.00 of the Company's value according to its usual accounting practices, which consisted of the Company's revenue.

54. Connecticut Law provides strong protection against company action that deprives of an individual of payments owed as the result of employment.

55. General Statutes Section 31-72, provides that the Company was an employer of Mr. Ferris in this regard as Mr. Ferris was permitted to work for the Company and Mr. Ferris earned certain, definite, compensation based on calculated service as an employee.

56. Mr. Ferris was to be protected in his right to payment upon his service to the Company, and it was the agreement entered into by and with Company that rendered these payments due.

57. By their agreement, Mr. Ferris was an "employee"; the Company was his "employer"; the payout represented "wages," as those terms are defined by General Statutes Section 31-72.

58. The agreement providing for the payout-payment is enforceable, and the agreement provides for the binding and enforceable agreement to make a certain payment in the event of termination.

59. Despite Mr. Ferris's termination, and despite the binding agreement to pay, Mr. Ferris has not been paid according to the agreed-upon schedule.

60. Under the Ferris Membership Agreement between the parties, by its terms and in effect, the chain of responsibility for paying to Mr. Ferris the disputed payout falls upon the majority members who voted to dismiss Mr. Ferris and divide his membership (and distribution interests) without paying Mr. Ferris anything.

61. Under the Simione Operating Agreement and the Ferris Membership Agreement, the Company agreed to distribute a certain percentage of its revenue to Mr. Ferris in return for his employment service to the Company.

62. Pursuant to the various operating agreements, however, the Company's decision making – including to pay or withhold the payouts (rightfully or wrongfully) – was tasked to the majority-members and, in particular, the managing-member of the Company, Mr. Simione.

63. During all relevant times, excluding Mr. Ferris, the members acted as a collective block of majority voting, and in deciding upon, Mr. Ferris's continued employment. Each of these members possessed not only controlling authority with regard to Mr. Ferris, but retirement and severance packages substantially greater than Mr. Ferris, as well as an implicit interest in wrongfully terminating Mr. Ferris without making the required payment to him (i.e. the remaining members would thereby absorb Mr. Ferris's distributional rights at no cost).

64. The non-Ferris membership had the ultimate authority and responsibility to decide whether to pay distributions to Mr. Ferris arising from his participation interests, and that the individual defendants willfully and intentionally caused the corporate defendant to refuse to pay distributions to Mr. Ferris. In so doing, and by refusing to pay the Mr. Ferris the payout, the individual defendants violated General Statutes §§ 31–71c and 31–71e. In addition, Mr. Ferris, for his employment, was entitled to and did not receive payment for accrued paid time off, vacation time, and other fringe benefits owed by contract and pursuant to General Statutes §31-76k.

65. As such, Mr. Ferris has been wrongfully denied wages under General Statutes §§ 31–71c and 31–71e and both the Company and the non-Ferris membership are liable for double the amount of the payments due and not made, and Mr. Ferris's reasonable attorneys' fees in pursuing this action.

WHEREFORE, Mr. Ferris prays for entry of judgment in his favor and the following relief:

a) Damages in an amount to be determined at trial;

b) Double damages in an amount to be determined at trial;

c) Punitive damages in an amount to be determined at trial;

d) All reasonable attorneys' fees and costs in this action;

e) Any and all allowable interest thereon; and

f) Such other forms of relief and damages as this Court deems just and proper.

**PLAINTIFFS DEMAND A JURY TRIAL AS TO ALL COUNTS AND MATTERS SO TRIABLE.**

Dated: June 13, 2019
Hartford, Connecticut

Respectfully submitted,

By: /s/ ct29237

Cody N. Guarnieri, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
860-522-3343 (Tel)
860-522-2490 (Fax)
cody@bpslawyers.com
Federal Bar: ct29237

*Attorneys for Plaintiff Michael Ferris*